## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KELLY DRUMM,

        *Plaintiff,*

   v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

        *Defendant.*

CIVIL ACTION
NO. 20-3309

**PAPPERT, J.**                                                                                    **May 3, 2022**

### MEMORANDUM

      Kelly Drumm seeks Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI.  He requested judicial review in federal court after an administrative law judge found he was not disabled.  The Court referred his case to Magistrate Judge Elizabeth Hey for a report and recommendation, and she recommended affirming the ALJ's decision.  Drumm objects to the R&R wholesale and on several specific grounds.  After considering the R&R, the parties' briefing and the social security administrative record, the Court overrules Drumm's objections and affirms the Commissioner of Social Security's denial of benefits.

---

[1]     Kilolo Kijakazi became the acting Commissioner of Social Security on July 9, 2021.  Pursuant to Federal Rule of Civil Procedure 25(d), she should be substituted for the former Commissioner, Andrew Saul, as the Defendant in this action.

I

A

Drumm applied for disability benefits on April 9, 2013.  (Administrative Record 135, 148, ECF 13.)  He was forty years old on his alleged disability onset date of December 20, 2012, and has not worked since then.  (R. 283–84.)  Drumm, who obtained a GED but completed no additional education, previously worked as a construction laborer and foreman, door installer, apartment maintenance worker and land development manager.  (R. 69–73, 330–31.)  He seeks benefits based on multiple impairments, including herniated discs, degenerative disc disease in the cervical and lumbar spine, degenerative joint disease in both knees, carpal tunnel syndrome in both hands, anxiety and depression.  (R. 329.)

Drumm's applications are before the Court a second time following a previous remand to the Commissioner for additional consideration on May 8, 2018.  (R. 1456–1498, Dkt. 16-3653, ECF 15.)  Drumm subsequently underwent physical and psychological evaluations by several physicians.  *See, e.g.*, (R. 2041–84).

The ALJ conducted hearings on May 3 and September 25, 2019, at which Drumm and his girlfriend, Amy Blodgett, testified.[2]  (R. 1371–1400, 1402–27.)  After considering the record evidence, the ALJ concluded Drumm was not disabled and issued a decision denying relief April 17, 2020.  (R. 1340.)

---

[2]     Blodgett additionally provided an affidavit and third-party function report about Drumm's medical issues, and her mother, Jacqueline Lewis, also submitted an affidavit.  (R. 352–54, 390–92.)

2

B

The Commissioner has established a sequential five-step evaluation process to determine whether a benefits claimant has a disability, defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period" of at least a year.  42 U.S.C. § 423(d)(1)(A); 20 CFR §§ 404.1520(a), 416.920(a).

At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." §§ 404.1520(b), 416.920(b).  If not, the ALJ turns to step two and decides whether the claimant has a "severe impairment."  §§ 404.1520(c), 416.920(c).  If so, the ALJ proceeds to step three to evaluate whether the impairment meets or medically equals one of the impairments listed in the governing regulations; if it does, the claimant qualifies as disabled.  §§ 404.1520(d), 416.920(d).  But if not, the ALJ moves to step four to determine whether the claimant has the "residual functional capacity" ("RFC") to perform any prior relevant work.  §§ 404.1520(e), 416.920(e).  If so, he or she will not be found disabled; if not, the fifth step requires the ALJ to consider the claimant's RFC, age, education and work experience to decide whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  §§ 404.1520(f)-(g), 404.1560(c), 416.920(f)-(g).  If so, he or she will not be found disabled; if not, he or she will be.  §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proof at steps one through four, the Commissioner at step five.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

C

In his decision, the ALJ concluded at steps one and two, respectively, that Drumm has not engaged in substantial gainful activity since his alleged disability onset date and has several severe impairments.  (R. 1345–46.)  He then determined at step three that Drumm lacks an impairment or combination of them that meets or medically equals a listed impairment.  (R. 1345–51.)  In particular, he found Drumm's right knee, left ankle and left foot impairments did not meet or medically equal listing 1.02A (major dysfunction of a weight-bearing joint) and that his mental impairments, alone or in combination, did not meet or medically equal listing 12.04 (depressive and related disorders) or 12.06 (anxiety disorders).  (R. 1347–50.)

The ALJ then determined Drumm had the RFC to perform "sedentary work" with "environmental" and "postural" limitations consisting of "simple, repetitive, routine tasks."  (R. 1351, 1358.)  In doing so, the ALJ concluded Drumm's medical records are inconsistent with his claims about his limitations and symptoms stemming from his mental and physical impairments, including that he needs a cane to walk.  (R. 1353–55.)  The ALJ also found Drumm's medical records do not show he persistently reported medication side effects of fatigue and grogginess.  (R. 1355.)  Additionally, the ALJ gave "limited weight" to the opinions of several physicians because they were inconsistent with record evidence: Drs. Christian Kcomt's and J. Philip Othmer's opinions on Drumm's limitations related to his mental impairments, and Drs. Youssef Kabbani's and Ahmed Kneifati's medical source statements about Drumm's physical capacity for performing work-related activities.  (R. 1355–57.)  The ALJ did the same

for observations from Drumm's girlfriend and her mother, as well as Drumm's Global Assessment of Functioning ("GAF") scores for mental health.  (R. 1358.)

After concluding at step four that Drumm cannot perform past relevant work, the ALJ determined at the final step that there are jobs existing in significant numbers in the national economy that Drumm can perform, such as table worker, final assembler and semiconductor bonder.  (R. 1359–60.)

### D

The ALJ's decision became the Commissioner's final decision when Drumm filed no exceptions and the Appeals Council did not assume jurisdiction.  *See* 20 CFR §§ 404.984(d), 416.1484(d).  On July 7, 2020, Drumm filed this lawsuit seeking judicial review of the ALJ's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (Compl., ECF 1.) He claimed the ALJ did not reasonably explain his finding that Drumm does not meet or equal the listed impairments and his evaluation of Drumm's residual functional capacity.  (Pl.'s Brief in Supp. of Review Req., ECF 14.)

On April 12, 2021, the Court referred the case to Judge Hey for a R&R.  (ECF 18.)  Judge Hey's R&R, issued roughly two months later, rejected Drumm's arguments and recommended the Court affirm the Commissioner's denial of benefits.  (ECF 21.) Drumm then filed objections to the R&R, and the Commissioner responded.  (ECF 22; ECF 24.)

### II

### A

Upon designation, a magistrate judge may submit proposed findings of fact and recommendations to a court for disposition.  28 U.S.C. § 636(b)(1)(B).  The court can

"accept, reject, or modify" the magistrate judge's findings or recommendations.
§ 636(b)(1). It reviews de novo the parts of the R&R to which a party specifically objects
but "need only satisfy itself that there is no clear error on the face of the record" for the
other parts. *Id.*; Fed. R. Civ. P. 72(b), advisory committee notes.

An ALJ's decision must be supported by substantial evidence. *Hagans v.
Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). In particular, a court must
determine, by reviewing the "record as a whole," whether substantial evidence supports
the ALJ's factual findings. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r of Soc. Sec.
Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). This is a "case-by-case" inquiry not subject to
"categorical" rules. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

The substantial-evidence threshold is "not high": evidence is substantial if a
"reasonable mind might accept [it] as adequate to support a conclusion," and it is "more
than a mere scintilla but may be somewhat less than a preponderance." *Id.* at 1154;
*Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*,
399 F.3d 546, 552 (3d Cir. 2005)). If substantial evidence supports the ALJ's findings,
the court cannot overturn them even if it "would have decided the factual inquiry
differently." *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (quoting *Hartranft v.
Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). It cannot reweigh the evidence or substitute
its factual findings for the ALJ's. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359
(3d Cir. 2011). A court's review of legal questions, however, is plenary. *Newell v.
Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003).

An ALJ must properly "consider, discuss and weigh relevant medical evidence"
and provide "some reason" when discounting it. *Fargnoli v. Massanari*, 247 F.3d 34, 42

6

(3d Cir. 2001); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *see Rutherford*, 399

F.3d at 554 (he "cannot reject evidence for no reason or the wrong reason" (quoting

*Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993))).  But the ALJ need not "make

reference to every relevant treatment note" when the claimant, like Drumm, has

"voluminous medical records" (more than 2,000 pages).  *Fargnoli*, 247 F.3d at 42.  Nor

is he required to "use particular language or adhere to a particular format" when

analyzing the evidence.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  Rather,

the ALJ need only "provide a sufficient framework of reasoning for a court to conduct

'meaningful judicial review'" of his decision, which should be read "as a whole."  *Id.*;

*Poulos*, 474 F.3d at 93 (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112,

119 (3d Cir. 2000)).  The ALJ's "evaluation of the evidence, assessment of the credibility

of witnesses, and reconciliation of conflicting expert opinions" are entitled to deference.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

## III

Although Drumm objects to Judge Hey's R&R "in its entirety," he also

specifically objects to several aspects of the ALJ's consideration of his physical and

mental impairments.  (Pl.'s R&R Objs.)

### A

#### 1

Drumm asserts the ALJ failed to reasonably explain his rejection of opinions

from Drs. Kneifati, Kabbani, Kcomt and Othmer.  (*Id.* at 3–9, 15–22.)

A medical opinion reflects "judgments about the nature and severity" of an

impairment.  20 CFR §§ 404.1527(a)(1), 416.927(a)(1).  The ALJ is generally not "bound

to accept" such an opinion and can "weigh the medical evidence and draw [his] own inferences." *Brown*, 649 F.3d at 196 (quoting *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986)).

The weight a medical opinion receives turns on several factors, including whether the physician has examined or treated the claimant, the amount and type of support provided and the opinion's consistency with the "record as a whole." §§ 404.1527(c), 416.927(c). The ALJ gives an opinion "controlling weight," however, if it is from a "treating source" and is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ's decisions to place "limited weight" on the opinions of Drs. Kneifati, Kabbani, Kcomt and Othmer were supported by substantial evidence. *See Hagans*, 694 F.3d at 292.

2

i

Dr. Kneifati performed a consultative internal medicine examination of Drumm on October 23, 2019, and provided a medical source statement of Drumm's ability to perform work-related physical activities. (R. 2041–58.) Dr. Kneifati concluded Drumm can occasionally lift and carry up to twenty pounds. (R. 2047.) He also opined that Drumm is limited in the use of his hands, noting he can only occasionally reach overhead with his right hand and feel with both hands, but also found his hand and finger dexterity are intact and he has "5/5" grip strength in both hands. (R. 2045, 2049.)

8

The ALJ reasoned that the "entirety" of Dr. Kneifati's opinion is inconsistent with the "entirety" of the record evidence, including findings regarding Drumm's lifting and carrying capacity.  (R. 1357.)  Drumm does not object to the ALJ's assessment of the lifting and carrying restrictions assessed by Dr. Kneifati.  (Pl.'s R&R Objs. 3.)  Moreover, the ALJ did not credit the manipulative limitations determined by Dr. Kneifati.  (R. 1357.)  The ALJ was not bound to accept these conclusions and properly explained they conflicted with Dr. Kneifati's findings concerning Drumm's hand and finger dexterity and grip strength.  *See Brown*, 649 F.3d at 196.

Drumm claims the ALJ did not "explicitly address" other limitations noted by Dr. Kneifati, including Drumm's purported inability to walk a block at a reasonable pace on uneven or rough surfaces.  (R. 2052.)  But the ALJ was not required to reference every relevant conclusion or finding made by Dr. Kneifati.  *See Fargnoli*, 247 F.3d at 42.  It is sufficient that he determined Dr. Kneifati's opinion was at odds with the record evidence.  *See, e.g.*, (R. 1353 (ALJ noting findings of Drumm's 5/5 strength in upper extremities)).

Like Dr. Kneifati, Dr. Kabbani, Drumm's podiatrist, completed a medical source statement on August 22, 2019.  (R. 2031–34.)  Dr. Kabbani concluded Drumm has limited foot control, can sit for two hours and stand and walk for one hour in an eight-hour workday and never perform postural activities such as bending, kneeling and crouching.  (R. 2032.)  He also determined Drumm is "unable to work" because of his physical limitations.  (R. 2034.)

The ALJ appropriately concluded Dr. Kabbani's opinion conflicted with Drumm's medical records "on a longitudinal basis."  (R. 1356.)  Among the many findings the ALJ

9

cited were Drumm having an upright posture and steady station, normal range of motion of his left knee and right ankle, and normal muscle tone, deep tendon reflexes and no atrophy in his lower extremities.  (R. 1356–57.)

Although Dr. Kabbani's status as a treating physician lends his opinion added weight, the ALJ did not discredit it without explanation or for the wrong reasons.  *See* §§ 404.1527(c), 416.927(c); *Rutherford*, 399 F.3d at 554.  Rather, he supported his decision with ample citations to the record, and the Court defers to his explanation.  *See Diaz*, 577 F.3d at 506.  Drumm objects that the ALJ's explanation lacks specificity, but the ALJ provided a long list of detailed findings that refute Dr. Kabbani's opinion.  (R. 1356–57.)

ii

Dr. Kcomt, one of Drumm's psychiatrists, completed a mental impairment questionnaire on September 25, 2014.  (R. 1288–91.)  Dr. Kcomt concluded Drumm has marked limitations in his ability to "remember locations and work-like procedures" and "int[eract] appropriately with the general public."  (R. 1289.)  Dr. Kcomt also determined Drumm has an "extreme" limitation in his ability to "carry out very short and simple instructions."  (*Id.*)  The ALJ adequately explained why he discounted Dr. Kcomt's conclusions, noting the record lacked evidence that Drumm got lost, couldn't remember procedures of any kind or appropriately interact with the public, didn't take his medication or couldn't carry out other simple instructions.  (R. 1355–56.)

The ALJ also noted Dr. Kcomt reported Drumm's scores on PHQ-9 and GAD-7 examinations—self-administered tests for depression and anxiety, respectively— suggesting he has significant symptoms for both.  (R. 1356.)  But those scores were

inconsistent with Dr. Kcomt's treatment records, including appointments where he assessed Drumm with a calm behavior and appearance, appropriate affect, normal attention and concentration, goal-directed and logical thought process, appropriate thought content and perceptions and good insight and judgment. *See, e.g.*, (R. 646, 844–45, 1262). The ALJ appropriately resolved this conflicting evidence. *See Dunson v. Comm'r Soc. Sec.*, 615 F. App'x 65, 69 (3d Cir. 2015) (ALJ properly refused to give controlling weight to treating physician's opinion when it was inconsistent with his treatment notes).

Again, while an ALJ generally must give the opinion of a treating physician like Dr. Kcomt "great weight," the ALJ did not do so here because it conflicted with findings in the record. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The Court has no reason to undo that decision, which was supported by clear reasoning. *See Plummer*, 186 F.3d at 429.

Dr. Othmer, another of Drumm's psychiatrists, completed a medical source statement on April 16, 2019. (R. 2013–17.) Dr. Othmer concluded Drumm's mental impairments cause several marked or extreme limitations, including in sustained concentration and persistence and ability to "sustain an ordinary routine without special supervision," "respond appropriately to changes in the work setting" and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 2014–16.)

Like the other physicians' opinions, Dr. Othmer's ran counter to the record evidence, including findings discussed in connection with Dr. Kcomt's opinion. (R.

1356.)  Consequently, the ALJ gave it limited weight even though Dr. Othmer, like Drs. Kabbani and Kcomt, treated Drumm.  *See* §§ 404.1527(c), 416.927(c).  The ALJ sufficiently weighed the evidence and explained his decision.  *See Brown*, 649 F.3d at 196.

B

Drumm objects that the ALJ did not reasonably explain his failure to find at step three of the sequential review process that Drumm's physical and mental impairments, considered alone or in combination, meet or medically equal listings 1.02A and 12.04. (Pl.'s R&R Objs 13–14, 26–30.)  The ALJ's conclusions are again supported by substantial evidence.  *See Hagans*, 694 F.3d at 292.

1

Among other symptoms, listing 1.02A is characterized by an "inability to ambulate effectively."  20 CFR Pt. 404 Subpt. P. App. 1 § 1.02A.  Ineffective ambulation is defined as an "extreme limitation of the ability to walk"—that is, an impairment that "interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities"—and it generally means "having insufficient lower extremity functioning" to allow "independent ambulation without the use of a hand-held assistive device," like a cane.  § 1.00B2b(1).  The ALJ concluded Drumm's right knee, left ankle or left foot impairments did not meet or medically equal this listing.  (R. 1347–48.)

While Drumm argues Dr. Kneifati's opinion establishes he was unable to ambulate effectively, the ALJ appropriately gave it limited weight.  *See supra* subsection III.A.2.i.  His determination that Drumm has no medical need for a cane further demonstrates this listing 1.02A criterion was not satisfied.  *See infra* subsection

12

III.C.2; § 1.00B2b(1).  More generally, the ALJ determined the record evidence does not show Drumm's impairments meet or equal this listing, which is sufficient for the Court to conduct meaningful judicial review.  *See Poulos*, 474 F.3d at 93.

2

A five-point rating scale—none, mild, moderate, marked and extreme—is used to evaluate the effects a claimant's mental disorder has on four areas of his mental functioning: "[u]nderstand, remember, or apply information"; "[i]nteract with others"; "[c]oncentrate, persist, or maintain pace"; and "[a]dapt or manage oneself."  20 CFR Pt. 404 Subpt. P. App. 1 § 12.00E, F.  Listing 12.04 requires that the claimant have a "marked" limitation in two or "extreme" limitation in one of them.  § 12.04.  A marked limitation means the claimant is "seriously limited" in his ability to function "independently, appropriately, effectively, and on a sustained basis," and an extreme limitation means he is unable to do so.  § 12.00F(2)(d)–(e).  In contrast, a mild limitation "slightly" limits a claimant's functioning, and a "moderate" limitation allows him to function "fair[ly]." § 12.00F(2)(b)–(c).

In determining Drumm's mental impairments do not meet or medically equal listing 12.04, the ALJ concluded Drumm has a mild limitation in understanding, remembering or applying information and moderate limitations in the three other areas of mental functioning.  (R. 1348–50.)  Those conclusions were sufficiently explained and supported by the record.  For each area, the ALJ cited significant evidence that rebutted Drumm's allegations and outweighed countervailing findings.  *See* (R. 1348–50).

The ALJ's analysis of whether Drumm can understand, remember or apply information—defined as the ability to "learn, recall, and use information to perform work activities," including understanding "procedures" and "sequencing multi-step activities"—is illustrative.  20 CFR Pt. 404 Subpt. P. App. 1 § 12.00E1.  The ALJ noted Drumm alleges difficulty understanding and following instructions and an impaired memory, as well as findings of poor insight and mildly impaired memory.  (R. 1349.) That evidence, however, was overridden by numerous clinical examination findings. *See, e.g.*, (R. 707 (intact judgment and good insight), 1869 (no memory loss), 1997 (logical thought process and intact thought association)).  Drumm's ability to count change, pay bills and manage a savings account and checkbook further supported the ALJ's conclusion.  (R. 357); *see Costa v. Comm'r of Soc. Sec.*, No. 19-13389, 2021 WL 1589347, at *11 (D.N.J. Apr. 23, 2021) (upholding ALJ's determination of mild limitation for understanding, remembering or applying information in part because claimant could count change and handle a checkbook).  The same is true for an SSA field office representative's statement that Drumm had no difficulty with answering, coherency or understanding during a telephone interview.  (R. 326); *see* Social Security Ruling 16-3P, 2017 WL 5180304 (ALJ will consider "statements in the record noted by agency personnel" who interviewed the claimant).

3

Part of the ALJ's task at step three is to determine whether the claimant's impairments "combined" meet or medically equal a listed impairment.  *Burnett*, 220 F.3d at 120.  But the ALJ need only "explicitly indicate[]" he considered the impairments in combination.  *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F.

14

App'x 186, 189 (3d Cir. 2008).  Stating the claimant's impairment does not equal a listing generally is "sufficient articulation."  Social Security Ruling 17-2P, 2017 WL 3928306.

The ALJ concluded that overall Drumm lacks an "impairment or combination of impairments that meets or medically equals" a listing.  (R. 1346); *see also* (R. 1348 (ALJ noting in particular that Drumm's mental impairments, "considered singly and in combination" do not meet or medically equal listing 12.04).  His explanation was proper and backed by significant record evidence.  *See Biestek*, 139 S. Ct. at 1154.

It is sufficient that the ALJ explicitly referred to Drumm's impairments in combination.  *See Morrison*, 268 F. App'x at 189.  In addition to the ALJ's overall conclusion, he explained he considered Drumm's "combination of impairments" in connection with his obesity.  (R. 1348.)

Further, the ALJ's analysis shows he adequately considered the evidence respecting whether Drumm's particular impairments meet or medically equal several listings—specifically, 1.04 (spine disorders), 1.02 (major joint dysfunction), 2.10 (specified hearing loss), 3.02 (chronic respiratory disorders), 12.04 (depressive and related disorders) and 12.06 (anxiety disorders).  (R. 1347–50.)  After considering Drumm's allegations and findings supporting his position, the ALJ concluded the record evidence showed his impairments did not rise to the level of a listing.  *See Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 734 (3d Cir. 2010) (upholding ALJ's determination that claimant lacked an "impairment or combination of impairments" that met or medically equaled a listing when ALJ applied relevant listing criteria following a thorough review of claimant's medical records).  Even if the ALJ's

explanation regarding Drumm's impairments combined was unclear, his analysis at a subsequent step—namely, his explanation of Drumm's RFC—supports his step three determinations.  *See Jones*, 364 F.3d at 505; Social Security Ruling 17-2P.

C

Drumm objects to the ALJ's discounting of certain statements from Drumm, Blodgett and her mother, Jacqueline Lewis, Drumm's GAF scores, his testimony about medication side effects and his purported need for a cane.  (Pl.'s R&R Objs 9–13, 23–26.)  The ALJ's conclusions are supported by substantial evidence.  *See Schaudeck*, 181 F.3d at 431.

1

Complaints of subjective symptoms like pain "must be supported by objective medical evidence."  *Hartranft v. Apfel*, 181 F.3d 358, 162 (3d Cir. 1999).  A physician's documentation that a claimant complained of pain, however, is not objective medical evidence.  *See Craig v. Chater*, 76 F.3d 585, 590 n.2 (4th Cir. 1996).  In assessing symptoms, the ALJ must determine whether there is a "medically determinable impairment" that "could reasonably be expected to produce" the symptoms and then assess their "intensity and persistence" and the extent to which they limit the claimant's ability to work.  *See* 20 CFR §§ 404.1529(b)(c), 416.929(b)(c); Social Security Ruling 16-3P, 2017 WL 5180304.

Drumm complained of pain in his neck, lower back, ankles and knees, anxiety, nervousness, feelings of worthlessness and guilt, an impaired memory and poor concentration, among other symptoms.  *See, e.g.*, (R. 431, 493, 546, 808, 969, 872, 1267, 1273, 1288, 1739).  He also testified to symptoms at ALJ hearings, including difficulty

16

stretching and reaching and "bouts of crying," and indicated symptoms of anxiety and depression in his PHQ-9 and GAD-7 questionnaires. (R. 84, 1380); *e.g.*, (R. 1265 (scores reported for May 14, 2014 appointment with Dr. Kcomt)). Further, Blodgett said in her third-party function report and affidavit that Drumm is "depressed all the time" and has pain "all over his body," among other observations, while Lewis noted in her affidavit that Drumm's physical impairments "make it very difficult for him to get around." (R. 352, 390, 392.)

The ALJ concluded that Drumm's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that his statements regarding the symptoms' limiting effects, persistence and intensity were inconsistent with the record evidence. (R. 1353.) He did so by weighing the relevant evidence and supported his analysis with detailed citations to the record. *See Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990) (ALJ can reject complaints of pain if he specifies "reasons for rejecting" them and supports determination with record medical evidence). For both Drumm's alleged physical and mental impairments, the ALJ noted his purported symptoms and then pointed to an abundance of evidence that controverted them. Among the findings at odds with the former were 5/5 strength and normal muscle tone with no atrophy in his upper and lower extremities, while the latter ran counter to findings of normal concentration and attention span and good insight and judgment, among others. (R. 656, 2044, 844, 1262.)

The depression and anxiety symptoms Drumm noted on his PHQ-9 and GAD-7 tests, respectively, as well as his testimony about mental health medication side effects of fatigue and grogginess, were similarly unsupported by the record. (R. 646, 844–45,

1262, 1382–83.)  With respect to the alleged side effects, which Drumm describes as a "relatively unimportant issue," there is scant evidence of these symptoms in his extensive medical records.  (Pl.'s R&R Objs. 24).  *But see, e.g.*, (R. 359 (antidepressant Remeron "[m]akes [Drumm] tired")).  In fact, no side effects were reported for many of Drumm's doctor's appointments.  *See, e.g.*, (R. 2009 (September 25, 2014 visit with Dr. Kcomt), 1955 (November 13, 2018 appointment with Dr. Othmer)).  The ALJ properly discounted these purported symptoms.  *See Burns v. Barnhart*, 312 F.3d 113, 130–31 (3d Cir. 2002) (ALJ appropriately didn't credit claimant's allegations of medication side effects when there were no "significant complaints" of side effects and no evidence of limitations caused by them).  Still, he accommodated them in prescribing Drumm's RFC.  (R. 1358.)

The ALJ also properly gave "limited weight" to statements from Blodgett and Lewis.  (R. 1358.)  Notwithstanding Blodgett's and Lewis's first-hand observations, their statements could not be reconciled with an "array of normal clinical examination findings" regarding Drumm's physical and mental impairments.  (*Id.*)  For instance, Blodgett said in her affidavit that Drumm is "able to do almost nothing these days."  (R. 390.)  Drumm's medical records, however, show his physical impairments are not nearly that debilitating.  *See, e.g.*, (R. 554 (upright posture), 1766 (full range of motion for all joints)).

2

For a "hand-held assistive device" such as a cane to be "medically required," there must be "medical documentation" showing its "need" as a walking or standing aid and describing the circumstances it is needed for—that is, "whether all the time,

18

periodically, or only in certain situations" and "distance and terrain."  Social Security Ruling 96-9P, 1996 WL 374185.  Here, the ALJ appropriately determined Drumm's cane use is not medically required.

Drumm says he uses a cane "[w]henever I leave the house," and his cane use was reported in some of his doctor's visits.  (R. 1374); *e.g.*, (R. 989 (June 10, 2014 visit with fibromyalgia clinic)).  But this is insufficient to establish that Drumm's cane is medically required.  As an initial matter, while the record shows Drumm was prescribed a cane in March of 2013, there is no evidence as to why.  (R. 359); *see* Social Security Ruling 96-9P.  In fact, at many of Drumm's appointments no cane use was reported, and he was found to have a gait described as "intact," "normal," "sturdy" or "symmetric."  *See, e.g.*, (549, 795, 1948).  These findings belie Drumm's claim that he has a "need for a hand-held assistive device" as a walking aid.  Social Security Ruling 96-9P.

Although Drumm relies on Dr. Kneifati's conclusions that Drumm needs a cane to walk and that it is "medically necessary," the ALJ properly gave limited weight to the opinion of Dr. Kneifati, a consultative examiner who had no doctor-patient relationship with Drumm.  (R. 2046, 2048); *see supra* subsection III.A.2.i.  Even if the Court were to assume Dr. Kneifati's opinion shows Drumm has a "need" for a cane, neither the opinion nor anything else in the record specifies why he requires one.  *See* Social Security Ruling 96-9P.  Accordingly, the ALJ's conclusion that a cane is not medically required is well supported by the evidence.  *Cf. Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (claimant's testimony that doctor provided him a cane and references to his use of it, plus doctor's noting a cane "script" and checking of box for a

"medically required" hand-held assistive device were insufficient to establish medical necessity).

3

A GAF score provides a "numerical summary of a clinician's judgment of [an] individual's overall level of functioning" regarding mental health. *Rivera v. Astrue*, 9 F. Supp. 3d 495, 504 (E.D. Pa. 2014) (alteration in original) (internal quotation marks omitted). It is considered a medical opinion. *Nixon v Colvin*, 190 F. Supp. 3d 444, 447 (E.D. Pa. 2016) (quoting Social Security Administration Administrative Message 13066).

Several GAF scores indicating "serious" or "moderate" symptoms were reported for Drumm. *See, e.g.*, (463, 805, 2013); Diagnostic and Statistical Manual of Mental Disorders-IV-TR 34. The ALJ properly gave them "little" weight. (R. 1358.)

In discussing Drumm's GAF scores, the ALJ explained that such a score is "merely an assessment of the claimant's overall level of functioning from a mental standpoint at one particular point in time" and can vary over time and by physician; and noted that the American Psychiatric Association removed the GAF evaluation from its manual for mental health disorders because it is unreliable and conceptually unclear and lacks clinical utility. (*Id*.); *see Kroh v. Colvin*, No. 13-1533, 2014 WL 4384675, at *17 (M.D. Pa. Sept. 4, 2014) (GAF scores have "fallen somewhat into disfavor"). While Drumm argues these reasons do not address him in particular, the ALJ provided more specific reasons elsewhere in his decision, which must be read as a whole. *See Jones*, 364 F.3d at 505. For example, the ALJ cited multiple findings that contradict both

Drumm's complaints and the opinions of Drs. Kcomt and Othmer about the severity of his mental impairments. *See supra* III.A.2.ii.

D

Drumm believes the ALJ did not reasonably explain his evaluation of Drumm's physical or mental residual functional capacity, defined as the "most [a claimant] can still do despite" his impairments. (Pl.'s R&R Objs 14–15, 27–28); 20 CFR §§ 404.1545(a)(1), 416.945(a)(1). An ALJ considers "all the relevant evidence" in the record when assessing the claimant's RFC. §§ 404.1545(a)(1), 416.945(a)(1). Here, following "careful consideration of the entire record," the ALJ concluded Drumm has the RFC to perform limited sedentary work. (R. 1351 (citing 20 CFR § 404.1567(a), 416.967(a)). This determination was supported by substantial evidence. *See Rutherford*, 399 F.3d at 552.

With respect to Drumm's physical RFC, the ALJ concluded he can carry or lift ten pounds occasionally and slightly less than that frequently, sit six hours and stand or walk for two hours in an eight-hour workday and occasionally climb stairs and ramps and stoop, crawl, balance, crouch and kneel—but that he cannot climb scaffolds, ladders or ropes. (R. 1351.) In doing so, the ALJ appropriately did not credit Drumm's alleged symptoms, his purported need for a cane, opinions from Drs. Kneifati and Kabbani and Blodgett's and Lewis's statements. *See supra* subsections III.A.2.i, C.1–2. He also properly determined that while Drumm has been treated for his physical impairments, the record shows his symptoms have responded to the treatment. *See, e.g.*, (R. 816–24 (October-November 2013 physical therapy appointments), 1279–85 (August-September 2014 orthopedist appointments)). Moreover, the ALJ adequately explained that

21

Drumm's purported limitations in his daily activities are belied by the "entirety of [his] medical records," including "normal" clinical examination findings and conservative treatment for his physical impairments.  *See, e.g.*, (R. 656 (normal muscle strength and tone in upper and lower extremities), 541–42 (Drumm choosing "activity modification" rather than surgery in May 2013 orthopedist appointment)).  Drumm's physical RFC, which accommodates his physical limitations, is owed deference and supported by far more than a "scintilla" of evidence.  *See Morales*, 225 F.3d at 317; *Zirnsak*, 777 F.3d at 610.

As for Drumm's mental RFC, the ALJ limited him to defined "low stress jobs," "simple, repetitive, routine tasks," no work at a "production rate pace" and only occasional interactions with coworkers, supervisors and the public.  (R. 1351.)  He reached that conclusion by properly discounting Drumm's symptoms, claims of medication side effects and GAF scores, opinions from Drs. Kcomt and Othmer and statements from Blodgett and Lewis.  *See supra* subsections III.A.2.ii, C.  Again, the ALJ appropriately determined that although Drumm has been treated and medicated for his mental impairments, the record demonstrates both have been effective.  *See, e.g.*, (R. 463–66 (antidepressants Clonazepam and Cymbalta), 1751 (February 2013 treatment plan from psychiatrist)).  The ALJ delineated the evidence underlying Drumm's mental RFC, which, again, accommodates his mental limitations.  *See Fargnoli*, 247 F.3d at 42; *e.g.*, *Starr v. Saul*, No. 19-920, 2020 WL 1975080, at *15–17 (E.D. Pa. Apr. 24, 2020) (upholding the ALJ's mental RFC evaluation when he "thorough[ly]" reviewed the record evidence).

An appropriate Order follows.

22

BY THE COURT:


___***/s/ Gerald J. Pappert***___
GERALD J. PAPPERT, J.